UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN RIOS,

                             Petitioner,

        v.

THE PEOPLE OF THE STATE OF NEW YORK,

                             Respondent.

**ORDER**

16 Civ. 8865 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        On November 15, 2016, pro se Petitioner Juan Rios filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, seeking to vacate his New York State conviction for murder in the second degree. (Pet. (Dkt. No. 2)) On November 29, 2016, this Court referred the petition to Magistrate Judge Sarah Netburn for a Report and Recommendation ("R&R"). (Order (Dkt. No. 6)) On November 26, 2019, Judge Netburn issued an R&R recommending that the petition be denied. (R&R (Dkt. No. 34)) For the reasons stated below, this Court will adopt the R&R in its entirety, and Rios's petition will be denied.

## BACKGROUND

### I. TRIAL

        On September 5, 2007, police discovered Denise DePerrie's naked and dead body on a mattress in an apartment building in Manhattan. (R&R (Dkt. No. 34) at 2-3 (citing Trial Transcript ("Tr.") at 110-11))[1] After his arrest, Rios confessed to stabbing DePerrie, his

---

[1] The parties have not objected to Judge Netburn's recitation of facts. Accordingly, this Court adopts her account of the facts in full. See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not

girlfriend, with a kitchen knife. (Id. at 2, 4 (citing Tr. 132)) A grand jury indicted Rios for murder in the second degree. (Indictment (Dkt. No. 11-1) at 2)

At trial, Rios did not deny killing DePerrie. (R&R (Dkt. No. 34) at 7-8 (citing Tr. 364-65)) Instead, he asserted an affirmative defense of extreme emotional disturbance, which would have made him guilty of manslaughter rather than second-degree murder. (R&R (Dkt. No. 34) at 2, 5 (citing Tr. 232; N.Y. Penal Law § 125.25(1)(a))

### A. The People's Case

In the People's opening statement, the prosecutor argued that Rios had "brutally murdered . . . DePerrie . . . by stabbing her multiple times in her chest, her side and her back and . . . her arms." (R&R (Dkt. No. 34) at 2 (quoting Tr. 2)) The prosecutor stated that "this was not the result of extreme emotional disturbance," but was "another domestic violence case of which there are way too many in this country." (Id. (quoting Tr. 2))

The People's first witness, Ronald Laietta, lived with Rios and DePerrie in a three-bedroom apartment in Manhattan. (Id. (citing Tr. 26)) Laietta often heard Rios and DePerrie arguing in their bedroom. (Id. at 2-3 (citing Tr. 32-33)) Laietta heard one such argument on August 31, 2007, and a few days later, he smelled a "[v]ery bad" odor near their bedroom. (Id. at 3 (citing Tr. 38-39)) On September 5, 2007, he entered the room and discovered DePerrie's dead body. (Id. (citing 38-39)) Laietta asked someone to call the police. (Id. (citing Tr. 39))

---

objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

New York City Police Department ("NYPD") Detective Andrew Oliver testified that he performed a computer check on Rios that day, and discovered a prior address associated with him in Brooklyn. (Id. (citing Tr. 117-18)) Detective Oliver visited that residence and spoke with Rios's mother and sister. (Id. (citing Tr. 118-19)) The sister had seen Rios a few days ago, and reported that Rios was "very distraught, disoriented," and "upset." (Id.) Rios told his sister that "he had done a very bad thing" and was considering checking into a mental hospital. (Id.)

Detective Oliver learned that Rios had checked into the Woodhull Hospital psychiatric ward. (Id. (citing Tr. 119-20)) When Detective Oliver approached Rios in the lobby of that facility, Rios turned around, put his hands behind his back to be handcuffed, and said, "Can I ask you one question, Detective, is she still alive?" (Id. at 4 (citing Tr. 120–22, 146))

At the precinct, Rios waived his Miranda rights and spoke with detectives for more than an hour, telling them that he and DePerrie had been arguing on August 31, 2007, because DePerrie wanted to take pills. (Id. (citing Tr. 124-29)) When Rios threw the pills down the drain, DePerrie became angry and said that she was leaving him. (Id.) Rios then tore off her clothes, threw her down on the bed, and tied a string between his watch and the doorknob so that he would wake up if she tried to escape while he was sleeping. (Id. (citing Tr. 131-32)) DePerrie told Rios that she was leaving him "no matter what," because "he was not man enough for her." (Id. (citing Tr. 132, 136)) Rios "snapped," grabbed a kitchen knife, and stabbed DePerrie 13 times in the torso and extremities. (Id. (citing Tr. 132))

Rios later recounted these events in a signed written confession and in a videotaped interview conducted by an assistant district attorney. (Id. at 4-5 (citing Tr. 134-35, 137-38))

## B. The Defense Case

The defense called two witnesses: forensic psychologist Dr. Marc Janoson and Rios himself. (Id. at 5 (citing Tr. 199, 338)) According to Dr. Janoson, Rios scored in the 99th percentile for depression and paranoia, which made him prone to explosive outbursts "not appropriately calibrated to the provocation." (Id. (citing Tr. 211)) Dr. Janoson testified that he reviewed Rios's medical records from Woodhull Hospital and found a note in his file stating that he was "malingering." (Id. (citing 214, 218)) Because this observation was inconsistent with the results of a diagnostic test that Dr. Janoson had administered to Rios, Dr. Janoson gave little credence to it. (Id. (citing Tr. 218-20)) Dr. Janoson opined that Rios was suffering from an EED when he killed DePerrie. (Id. (citing Tr. 232))

During cross-examination, the prosecutor asked Dr. Janoson whether he had relied on a medical report from Woodhull Hospital in preparing his expert report. Dr. Janoson testified that he had. (Id. at 6 (citing Tr. 242)) The prosecutor then pointed out that the Woodhull Hospital medical report postdated Dr. Janoson's report. (Id.) Dr. Janoson then acknowledged that his report did not account for the Woodhull Hospital medical report. (Id.)

The prosecutor also asked Dr. Janoson whether he was aware that Rios had been accused of assaulting DePerrie a month before her death. (Id. (citing Tr. 269-70)) Dr. Janoson said that Rios "was adamant that he hadn't" done so. (Id. (citing Tr. 270)) The prosecutor then asked whether Dr. Janoson's opinion would change if he "learned that, in fact, [Rios] had assaulted [DePerrie] by breaking her nose and cutting her with a Samurai sword earlier." (Id.) Defense counsel objected, and the court instructed the jury that the prosecutor had only asked a hypothetical question, and that the prosecutor's statements were not evidence. The court

4

permitted the hypothetical question, however, stating that it could assist the jury in assessing "what forms the basis of this witness'[s] opinion." (Id. (citing Tr. 270-71))

Rios testified that he had been abused as a child, which led him to run away at age fifteen, live on the streets, and become involved in drugs and petty crime. (Id. at 7 (citing Tr. 340-49)) Rios explained that DePerrie would often take so many pills that he "would have to practically carry her in the streets." (Id. (citing Tr. 362)) Observers would laugh at DePerrie, which led Rios to get into arguments with them. (Id.) Rios emphasized that these altercations were merely verbal: "It was nothing physical. It was just verbal[]." (Id.)

While cross-examining Rios, the prosecutor asserted that he had made a conscious decision to kill DePerrie:

> [Prosecutor:] It was a conscious decision when you reached over and grabbed the knife, wasn't it?
>
> [Rios:] It wasn't a conscious decision. It was something that I didn't have no control over. If it was that easy, I would just say give me whatever time I owe, any punishment. I just take it and I'm not worried.
>
> [Prosecutor]: I didn't hear any of that. . . .
>
> [Rios:] I said if I made [a] conscious decision to kill her I would be man enough to take whatever time that I got coming to me. I wouldn't want to deny her any punishment that I have coming to me if it was like that. But it wasn't like that.
>
> [Prosecutor:] You don't want to be convicted of murder, right?
>
> [Rios:] What's the difference? Life off the end of the sentence.
>
> [Prosecutor:] So why don't you plead guilty?
>
> [Defense counsel]: I really have to object to that question.
> THE COURT: No –
>
> [Rios:] Yes. Because it wasn't a conscious decision.

(Id. at 7-8 (quoting Tr. 395-96))

### C. The People's Summation

In closing argument, the prosecutor dismissed Rios's extreme emotional defense claim and repeatedly characterized the incident as "a case of domestic violence." (Id. at 8 (citing Tr. 458, 460–61, 469)) He told the jury to "apply the law and do so without sympathy or prejudice, and particularly without sympathy for the defendant who may have seemed particularly vulnerable on the witness stand here, speaking in a slow, quiet voice." (Id. (citing Tr. 461)) The prosecutor suggested that Rios's tale of abuse as a child may not have been true, noting that none of Rios's family members had testified and "corroborate[d] the story about the violence in his youth." (Id. (citing Tr. 462)) The prosecutor also suggested that Rios's altercations with those who mocked DePerrie may have been physical, given that Rios described these encounters as "fights" in his videotaped confession. (Id. at 8-9 (citing Tr. 463)) Challenging Rios's credibility on this point, the prosecutor said, "Yes, I would fight with people in the street . . . but fights on the street now suddenly today means, well, I argued." (Id. at 9 (citing Tr. 477))

The prosecutor also commented on Rios's query to Detective Oliver about whether DePerrie was still alive. The prosecutor said that this "was really more wishful thinking than anything else. He knew she was dead before he left." (Id. (citing Tr. 474))

Finally, the prosecutor urged the jury to reject Dr. Janoson's testimony, referring to him as "a fraud, . . . a charlatan, and . . . a liar. You cannot believe him, you cannot trust him, you cannot rely on anything that he has said." (Id. (citing Tr. 478-79)) The prosecutor noted that Dr. Janoson initially claimed that his report had taken into account a Woodhull Hospital medical record, even though the Woodhull record postdated his own. (Id. (citing Tr. 481)) The prosecutor also pointed out that Dr. Janoson had been compensated by the defense, making him

6

"predisposed to decide in favor of the defendant in this case. Nothing that I asked him, nothing that I suggested, no possible scenario would ever change his mind about anything." (Id. (citing Tr. 481-82))

> D.     **Verdict and Sentencing**

The jury rejected Rios's extreme emotional disturbance defense, and convicted him of murder in the second degree. (Id. (citing Tr. 537-38)) On November 21, 2011, Rios was sentenced to 25 years to life imprisonment. (Id. at 8-9 (citing Sentencing Transcript at 13))

## II.    POST-CONVICTION PROCEEDINGS

> A.     **Direct Appeal**

On direct appeal, Rios argued that the prosecutor's cross-examination and closing argument deprived him of his due process right to a fair trial. (Id. at 10 (citing Def. App. Br. (Dkt. No. 11-1) at 19-29)) Rios complained that the prosecutor mischaracterized evidence, impermissibly called Dr. Janoson a liar, overstated the strength of the People's case, and improperly suggested that Rios should have pleaded guilty. (Def. App. Br. (Dkt. No. 11-1) at 19-29)

On November 6, 2014, the First Department affirmed Rios's conviction. People v. Rios, 122 A.D.3d 413, 413 (1st Dep't 2014). The court's decision reads as follows:

> Defendant's challenges to the prosecutor's cross-examination and summation are unpreserved, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal. To the extent there were improprieties, the errors were harmless, given the overwhelming evidence establishing defendant's guilt and refuting his affirmative defense of extreme emotional disturbance.

Id. (citations omitted). On March 31, 2016, the New York Court of Appeals denied leave to appeal. People v. Rios, 27 N.Y.3d 968 (2016).

7

### B.  Federal Habeas Petition and Subsequent State Proceedings

On November 2, 2016, Rios timely filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  (Pet. (Dkt. No. 2))  The brief accompanying the petition repeats verbatim the arguments that Rios raised in the Appellate Division.  (Pet. Br. (Dkt. No. 3); Pet. App. Br. (Dkt. No. 11-1) at 19-29; R&R (Dkt. No. 34) at 10)  On November 29, 2016, this Court referred Rios's petition to Judge Netburn for an R&R.  (Dkt. No. 6)

In December 2017, Judge Netburn granted Rios's motion to stay pending the resolution of his state court motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10.  (Dkt. No. 24)  After the state court denied Rios's motion, he informed Judge Netburn that he wished to file a second § 440.10 motion to vacate based on ineffective assistance of counsel.  (Dkt. No. 25, 27)  In December 2018, Judge Netburn entered a stay to permit Rios to pursue his second §440.10 motion.  (Dkt. No. 28)

As of August 2019, Rios still had not filed that motion.  (Dkt. No. 30)  On September 26, 2019, Judge Netburn issued an order extending Rios's time to file the motion until October 28, 2019, and warned him that there would be no further extensions.[2]  (Dkt. No. 33) Rios still did not submit proof that he had filed the motion.  (R&R (Dkt. No. 34) at 11)  Finding that Rios no longer had good cause for his failure to exhaust, Judge Netburn deemed Rios's habeas petition fully submitted.  (Id.) see Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (holding that habeas proceedings "should not be stayed indefinitely" and that "district courts should place reasonable time limits on a petitioner's trip to state court and back").

---

[2]  Judge Netburn's order states:  "Petitioner must file his motion to vacate no later than Monday, October 28, 2019.  This deadline will not be extended.  Petitioner shall file a status letter with the Court containing written proof that his motion has been filed by the October 28 deadline no later than Friday, November 1, 2019.  Absent this proof, the Court will lift the stay and deem the petition fully submitted."  (Dkt. No. 33)

8

### III. JUDGE NETBURN'S REPORT AND RECOMMENDATION

#### A. Procedural Bar

In her November 26, 2019 R&R, Judge Netburn finds that Rios's claim – that the prosecutor's argument and examination deprived him of his due process right to fair trial – is procedurally barred. (R&R (Dkt. No. 34) at 13-14) Judge Netburn notes that "'[f]ederal courts considering habeas corpus petitions are generally barred from reviewing the decisions of state courts insofar as those decisions are predicated on adequate and independent state procedural grounds.'" (Id. at 13 (quoting Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006)) Under New York Criminal Procedure Law § 470.05(2), defendants must contemporaneously object to alleged errors to preserve those issues for appellate review. (Id. (citing People v. Jackson, 29 N.Y.3d 18, 22 (2017)) For an issue to be preserved, the objection must be "'specifically directed' at the alleged error.'" (Id. (quoting People v. Gray, 86 N.Y.2d 10, 19 (1995)) The failure to preserve a claim through a contemporaneous objection bars habeas review of the claim. (Id. (citing Downs v. Lape, 657 F.3d 97, 103-04 (2d Cir. 2011))

Judge Netburn notes that the Appellate Division found that Rios's "'challenges to the prosecutor's cross-examination and summation [were] unpreserved.'" (Id. at 13 (quoting Rios, 122 A.D.3d at 413)) Although Rios made a "generalized objection" when the prosecutor asked Rios why he had not pled guilty, Judge Netburn found that this objection was insufficient to alert the trial court that Rios was claiming that he was deprived of a fair trial based on an array of remarks by the prosecutor at multiple stages of the trial. (Id. (citing People v. Tonge, 93 N.Y.2d 838, 839 (1999)) Because Rios failed to adequately preserve his claim, Judge Netburn found that the claim was procedurally barred. (Id.)

Although a court considering a habeas petition can review a procedurally barred claim where the petitioner shows "'cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim will result in a fundamental miscarriage of justice,'" Rios made no attempt to make such a showing. Judge Netburn therefore concluded that his claim is procedurally barred. (Id. at 13-14 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991))

### B. Merits

Judge Netburn went on to find that even if Rios's claim was not procedurally barred, it would fail on its merits. (Id. at 14-19)

Section 2254(d) provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see R&R (Dkt. No. 34) at 14.

As Judge Netburn notes, to establish a claim of constitutional error on the ground of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's actions "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (Id. (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986))

Here, Rios's claim is based primarily on the prosecutor's cross-examination of Dr. Janoson and Rios, and remarks that the prosecutor made about both witnesses in summation.

10

(Id. at 15) Rios complains that the prosecutor characterized Dr. Janoson as a "charlatan," a "fraud," and a "liar," and implied that the defense had paid him to lie. (Id. at 16; Pet. Br. (Dkt. No. 3) at 8-11)

While acknowledging the prosecutor's "[r]hetorical excesses," Judge Netburn found that the prosecutor's criticism of Dr. Janoson was tied to "specific inconsistencies in [his] testimony," and did not violate Rios's constitutional right to a fair trial. (Id. at 16-17 (citing United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987) ("[U]se of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory.")) For example, Judge Netburn noted that the prosecutor properly attacked Dr. Janoson's credibility with respect to the Woodhull Hospital record, which Dr. Janoson testified he had considered in preparing his report, but which had not yet been written when Dr. Janoson issued his report. (Id. at 15)

In response to Rios's argument that the prosecutor posed an improper hypothetical question to Dr. Janoson about a prior alleged attack on DePerrie (Pet. Br. (Dkt. No. 3) at 6), Judge Netburn notes that Rios had not pointed to any case suggesting that the question amounted to a violation of Rios's federal constitutional rights. (R&R (Dkt. No. 34) at 16) Moreover, the trial court instructed the jury that the hypothetical question was not evidence of Rios's guilt. (Id.)

As to the prosecutor's query to Rios about why he hadn't pleaded guilty, Rios claims that this question suggested that he should not have exercised his right to a jury trial. (Pet. Br. (Dkt. No. 3) at 12-13) Judge Netburn found, however, that the prosecutor was not suggesting that Rios should not have exercised his right to a trial, but was rather "probing and testing Rios's [extreme emotional disturbance] defense." (R&R (Dkt. No. 34) at 17) Judge

11

Netburn also notes that this question followed Rios's assertion that if he had intentionally killed DePerrie, he would have accepted "whatever time I owe, any punishment. I wouldn't want to deny [DePerrie] any punishment that I have coming to me if it was like that. But it wasn't like that." (Id. at 7, 17 (citing Tr. 395-96)) Viewed in context, Judge Netburn found that the question was not improper. (Id. at 17)

Rios also objects to the prosecutor's suggestion in summation that he knew DePerrie was dead when he asked Detective Oliver at Woodhull Hospital whether she was still alive. (Pet. Br. (Dkt. No. 3) at 8) But Judge Netburn found that it was not improper for the prosecutor to ask the jury to draw this inference, given that Rios acknowledged stabbing the victim thirteen times. (R&R (Dkt. No. 34) at 17 (citing United States v. Edwards, 342 F.3d 168, 181 (2d Cir. 2003) (noting the "broad latitude in the inferences [a prosecutor] may reasonably suggest to the jury"))

Rios also objects to the prosecutor's references to "domestic violence" during the People's opening and summation, and the suggestion that jurors could only accept Rios's defense if they "let sympathy have an impact on the verdict." (Pet. Br. (Dkt. No. 3) at 5, 10) Judge Netburn found the references to domestic violence to be permissible, because the prosecutor was merely offering an alternative to Rios's theory of extreme emotional disturbance. (R&R (Dkt. No. 34) at 18) Judge Netburn further concludes that characterizing the extreme emotional disturbance theory as a plea for sympathy was within the bounds of acceptable advocacy. (Id.)

In summation, the prosecutor observed that Rios presented as "vulnerable" on the witness stand, and spoke in "a slow, quiet voice." (Id. at 8, 18 (quoting Tr. 461)) Rios takes issue with these characterizations of his demeanor. (Pet. Br. (Dkt. No. 3) at 11-12) But Judge Netburn found that Rios's demeanor had obvious relevance to his credibility, which "'became a

12

matter for the jury when he took the witness stand.'" (R&R (Dkt. No. 34) at 18 (quoting United States v. Durrani, 835 F.2d 410, 424 (2d Cir. 1987)).

Rios also complains that the prosecutor – in suggesting that Rios had fought with observers who laughed at DePerrie, and then lied about it at trial – mischaracterized the evidence. (Pet. Br. (Dkt. No. 3) at 7) Judge Netburn found, however, that the prosecutor was simply pointing out a potential inconsistency between Rios's testimony and statements he made during his videotaped confession, which is entirely permissible. (R&R (Dkt. No. 34) at 18)

Finally, Rios complains that the prosecutor, in summation, sought to shift the burden of proof to the defense by highlighting that Rios did not call witnesses to corroborate his account of his abusive childhood. (Pet. Br. (Dkt. No. 3) at 12) As Judge Netburn points out, however, Rios had the burden of establishing his extreme emotional disturbance affirmative defense by a preponderance of the evidence. (R&R (Dkt. No. 34) at 19 (citing N.Y. Penal Law §§ 25.00, 125.25(a)(1)) The prosecutor was merely arguing that Rios had failed to meet his burden to establish this affirmative defense. (Id.)

Having considered the prosecutor's remarks both individually and collectively, Judge Netburn found that they did not give rise to a constitutional violation. (Id.) Accordingly, Rios failed to demonstrate that the Appellate Division's decision upholding his conviction was contrary to, or involved an unreasonable application of, clearly established federal law. (Id.)

## DISCUSSION

### I. LEGAL STANDARD

In reviewing a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a timely objection has been made to an R&R, the district court

13

judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. A party, however, "generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object." DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.").

Here, despite clear warning that the failure to file timely objections would result in a waiver of judicial review (R&R (Dkt. No. 34) at 20), Rios has not objected to Judge Netburn's R&R. Accordingly, Rios has waived judicial review. See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report."). However, because a failure to file timely objections does not affect a district judge's jurisdiction and "may be excused in the interests of justice," DeLeon, 234 F.3d at 86 (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court will consider whether there is any "'clear error on the face of the record'" that precludes acceptance of the magistrate judge's recommendation. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note); see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.").

## II.     ANALYSIS

Here, this Court has carefully reviewed Judge Netburn's R&R and finds no error, clear or otherwise. Judge Netburn correctly concluded that Rios's claim is procedurally barred. "New York's contemporaneous objection rule 'is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim.'" Harris v. Great Meadow Corr. Facility, No. 17-CV-00760 (AMD), 2020 WL 1000066, at *6 (E.D.N.Y. Mar. 2, 2020) (quoting Williams v. Artus, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010)).

The Appellate Division found that "Defendant's challenges to the prosecutor's cross-examination and summation are unpreserved." Rios, 122 A.D.3d at 413. And in the brief Rios submitted in support of his habeas petition, Rios admits that no objection was made to remarks that he now claims constitute prosecutorial misconduct. (Pet. Br. (Dkt. No. 3) at 13) ("not every instance is objected to or preserved for appellate review")) Although defense counsel objected to the prosecutor's question about why Rios had not pleaded guilty, and to the hypothetical question the prosecutor posed to Dr. Janoson, these objections were insufficient to preserve Rios's broader claim that his trial was replete with "[f]lagrant and pervasive prosecutorial misconduct [that] deprived [him] of his constitutional right to a fair and impartial trial." (Pet. Br. (Dkt. No. 3) at 4) see Williams v. Jacobson, No. 15CV5319 (ER) (JLC), 2016 WL 4154700, at *10 (S.D.N.Y. Aug. 5, 2016), report and recommendation adopted, 2016 WL 7176648 (S.D.N.Y. Dec. 7, 2016) ("[T]he preservation requirement compels that the argument be specifically directed at the alleged error. . . . The word 'objection' alone was insufficient to preserve the issue . . . .") (emphasis added) (citations and internal quotation marks omitted). Because Rios's claim was not preserved at trial, he is procedurally barred from pursuing it here.

15

"A petitioner may overcome procedural default only with a demonstration of 'cause and prejudice' or a 'fundamental miscarriage of justice.'" Gueits v. Kirkpatrick, 612 F.3d 118, 127 (2d Cir. 2010) (citing Murray v. Carrier, 477 U.S. 478, 495-97 (1986)). As Judge Netburn notes, Rios has made no effort to show that he can satisfy either test. (R&R (Dkt. No. 34) at 13-14) And given the overwhelming evidence of Rios's guilt – which includes a written confession and a videotaped confession – it is clear that he can show neither "cause and prejudice" nor a "miscarriage of justice." See Perez v. McGinnis, No. 96-CV-5868 (ARR), 1999 WL 1021818, at *6 (E.D.N.Y. Jan. 4, 1999) (neither "cause and prejudice nor . . . fundamental miscarriage of justice" standard were satisfied where "the evidence confirming petitioner's guilt . . . was . . . overwhelming").

Because (1) Rios's claim is procedurally barred, and (2) Rios has not overcome the procedural bar, this Court need not reach the merits of his claims. See Moore v. Ercole, No. 09-CV-1003 CBA, 2012 WL 407084, at *6 (E.D.N.Y. Feb. 8, 2012) ("'An adequate and independent finding of procedural default will bar habeas review of [a] federal claim.'") (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)).

Even if the Court were to reach the merits, however, Rios's petition would be denied. For the reasons explained by Judge Netburn, most of the prosecutor's remarks were entirely proper, and none of them was so prejudicial as to render Rios's trial "'fundamentally unfair.'" See Sheard v. Lee, No. 18 CIV 2125 (ALC) (RWL), 2019 WL 5847151, at *6 (S.D.N.Y. Oct. 7, 2019), report and recommendation adopted, 2019 WL 5810306 (S.D.N.Y. Nov. 6, 2019) ("It is not enough that the prosecutor's remarks were improper; rather, 'the question . . . is whether 'the prosecutorial remarks were so prejudicial that they rendered the trial . . . fundamentally unfair.'") (quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990)); see

16

also Ainsley v. La Manna, No. 18-CV-3738 (PKC), 2019 WL 1407325, at *11 (E.D.N.Y. Mar. 28, 2019) ("'[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting Darden, 477 U.S. at 181); Dunn v. Sears, 561 F. Supp. 2d 444, 455 (S.D.N.Y. 2008) ("It is well-settled that the propriety of comments made by a prosecutor on summation generally does not present a federal constitutional violation"). For these reasons, Rios's petition fails on the merits.

## CONCLUSION

For the reasons stated above, the Court adopts Judge Netburn's R&R (Dkt. No. 34) in its entirety, and Rios's petition is denied.

Because Rios has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue under 28 U.S.C. § 2253(c)(1)(A). This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a non-frivolous issue).

The Clerk of Court is directed to mail a copy of this order by certified mail to pro se Petitioner, and to close this case.

Dated: New York, New York
      March 23, 2020

SO ORDERED.

*Paul G. Gardephe* (signature)

_____
Paul G. Gardephe
United States District Judge